IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE IGNACIO SANDOVAL,<br><br>    Defendant. | No. CR13-3003-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

_____

*Introduction*

Defendant Jose Ignacio Sandoval is charged by indictment (Doc. No. 3) with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. He has filed a motion (Doc. No. 110) to suppress all evidence obtained as a result of a search of his house, including (he argues) statements he made in a post-*Miranda* interview. Plaintiff (the "Government") has resisted the motion (Doc. No. 119). The Trial Management Order (Doc. No. 13) assigns motions to suppress to me to conduct any necessary evidentiary hearings and to prepare reports on, and recommended dispositions of, those motions.

I held an evidentiary hearing on August 26, 2013. Assistant United States Attorney Shawn Wehde appeared on behalf of the Government. Sandoval appeared personally and with his attorney, Jim McGough. The Government did not offer the testimony of any witnesses. The defendant testified on his own behalf. In addition, defendant's exhibits A, B and C, which were attached to Sandoval's motion as Doc. Nos. 110-2, 110-3 and 110-4, were admitted into evidence without objection. The motion is now fully submitted.

*Summary of Evidence*

Unless otherwise noted, the following information is derived from defendant's exhibit A, which consists of a search warrant application and the documentation submitted with that application:

On January 9, 2013, Special Agent Eric Young submitted an application for a search warrant to the Iowa District Court for Hamilton County. Def. Ex. A (Doc. No. 110-2 at 1). The application sought the issuance of a warrant to search a residence located at 1879 Stonega Avenue in rural Hamilton County, along with three vehicles. *Id.* The application included supporting affidavits executed by Young. Doc. No. 110-2 at 2-6, 10-11. In his affidavits, Young provided information he had gathered from several informants and agents concerning Sandoval who, according to sources, went by "Nacho."

Young first described information obtained from Christopher Hawken, who had been arrested for drug activity and had given a post-*Miranda* statement on December 30, 2012. Hawken said he had been purchasing methamphetamine from Jeremy Roberts. Roberts told Hawken he got his methamphetamine from a black male named "JP" who was from Boone, Iowa. Young knew "JP" was James Poole from Boone, Iowa. He had also observed Poole's vehicle in the driveway of Hawken's residence. Roberts occasionally stayed at Hawken's residence so Hawken was able to observe Roberts' drug transactions with Poole. Roberts told Hawken that Poole was being supplied with methamphetamine by a Mexican male named "Nacho."

Young next stated that in early December of 2012, he spoke with Wright County Deputy Darren Robinson about information he had received relating to Jose Sandoval. Robinson told Young that Sandoval used the nickname "Nacho" and provided the address of Sandoval's residence near Webster City in rural Hamilton County. Robinson said different cooperating defendants had identified Sandoval as a source for methamphetamine distribution.

Young also stated that on May 22, 2012, officers with the North Central Iowa Narcotics task force interviewed Joseph Stetz, who was in custody at the Cerro Gordo County jail for forgery and theft charges. Stetz was a methamphetamine user and had learned how to manufacture the substance. Stetz described other sources of methamphetamine that he knew about, including a Mexican male from Webster City named "Nacho." Stetz had heard from Jimmy Morris that "Nacho" was his supplier. Morris told Stetz he had made "Nacho" $100,000 in a month by selling methamphetamine for him. Morris also told Stetz he had observed pails of methamphetamine in the back of "Nacho's" white Cadillac Escalade and had seen a table covered with cash from methamphetamine sales at "Nacho's" house.

Young further stated that on September 4, 2012, officers with the North Central Iowa Narcotics task force conducted a proffer interview with Pedro Delatorre at the Fayette County jail. Delatorre stated he sold methamphetamine that he received from "Nacho." He did not know "Nacho's" real name, but knew that he drove a white Cadillac Escalade. Delatorre met "Nacho" through Morris. He purchased one to two ounces twice each month from "Nacho" for one and a half years. He also purchased cocaine from "Nacho."

Young next stated that he had consulted Department of Transportation records and found that two Cadillac Escalades were registered in Sandoval's name. In his description of the property to be searched, Young itemized two Cadillac Escalades by year, license plate and color, indicating that both were white.

Next, Young stated that on January 8, 2013, James Poole and his wife were pulled over by Trooper David Saldivar. A canine sniff of their vehicle resulted in a positive indication and a large quantity of methamphetamine (approximately one quarter pound) was recovered from the vehicle. Special Agent Bryant Strouse conducted a post-*Miranda* interview of Poole. During this interview, Poole stated he received methamphetamine from a Mexican male referred to as "Nacho." Poole described "Nacho's" residence as rural property located outside of Webster City and provided

detailed directions of how to get there. These directions were consistent with Sandoval's address, previously provided by Robinson.

Poole also stated in his post-*Miranda* interview that he had been purchasing five to six ounces of methamphetamine from "Nacho" every three days for the last month. He stated that he owed "Nacho" $12,000 for the methamphetamine he was arrested with and that he had received it from "Nacho" shortly before he was pulled over. Poole told Strouse he conducted all of his transactions at "Nacho's" residence. He further stated that "Nacho" had told him he was supplying methamphetamine to others in Fort Dodge and Story City. According to Poole, when Poole was meeting with "Nacho" shortly before being arrested, "Nacho" told him another individual who delivered drugs for him had just been arrested in Wright County with cocaine and methamphetamine. Young contacted Robinson, who told him he had arrested an individual with methamphetamine and cocaine that morning. Poole also stated that he had observed several guns at "Nacho's" residence, including an AK-47, AR 15 assault rifles, a .45 caliber handgun and a .380 caliber handgun.

Young attached "Affidavit B" to the search warrant application in support of the information Poole provided. Doc. No. 110-2 at 10-11. In this affidavit, he indicated Poole was reliable because (a) he was a mature individual, (b) he had supplied information twice in the past, (c) he had helped supply the basis for two search warrants, (d) he had provided past information that led to the discovery and seizure of stolen property, drugs or other contraband, (e) he had not given false information in the past and (f) the information he supplied for this investigation had been corroborated by law enforcement personnel. The affidavit included a summary of the information Poole had provided in the past and of his criminal history.

The Iowa District Court Judge found that the information provided by Young was sufficient to establish probable cause and issued the warrant. Doc. No. 110-2 at 12; *see also* Def. Ex. C (Doc. No. 110-4). He noted that a portion of the grounds for issuance was based on a named informant (Poole). Doc. No. 110-2 at 12. He found

that the informant had given reliable information on previous occasions and that the information he had provided was reliable based on his past history, its corroboration with previous and current information and its consistency with previous witness interviews. *Id*.

During the hearing, Sandoval testified that when the search warrant was executed he was read his *Miranda* rights and asked to speak to a lawyer. He was then transported to the jail. After being in custody for several hours, Sandoval asked a jailer to contact Young because he wanted to make a statement. Young came to the jail and told Sandoval about the information Poole had provided against him. Sandoval then made incriminating statements to Young. He now argues that those statements should be suppressed as "fruit of the poisonous tree" because he would not have made the statements but for the allegedly-illegal search of his house.

## *Discussion*

### A. *Probable Cause To Issue The Search Warrant*

Sandoval argues the search warrant lacked probable cause because (a) the information in the affidavit was stale, (b) the informants' statements were unreliable and (c) there was not a sufficient correlation or nexus that connected him or his residence to information about "Nacho."

Probable cause exists if the affidavit in support of the search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Warford,* 439 F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the decision of the issuing judge, the court must determine if the issuing judge "had a substantial basis for … conclud[ing] that probable cause existed." *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003). If the issuing judge relied solely on the supporting affidavit to issue the warrant, then "only that information which is found within the four corners of the affidavit" may be

5

considered in determining the existence of probable cause. *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) (citing *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).

Probable cause is determined by considering the totality of the circumstances and the issuing judge's resolution of the question "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010); *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

### 1. *Staleness*

Sandoval argues some of the information supporting the search warrant was stale because it had been provided on May 22, 2012, and September 4, 2012. Sandoval relies solely on the passage of time from when the information was given to when the search warrant was issued (January 9, 2013) to argue that the information was stale.

"There is no bright-line test for determining when information in a warrant is stale." *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008). Time factors must be examined in the context of a specific case and the nature of the crime under investigation. *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). "The factors in determining whether probable cause has dissipated, rendering the warrant fatally stale, 'include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search.'" *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010) (quoting *United States v. Gibson*, 123 F.3d

1121, 1124 (8th Cir. 1997)). "[W]here continuing criminal activity is suspected, the passage of time is less significant." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)).

Sandoval acknowledges these standards in his brief, then ignores them. Instead, he simply declares that the information provided by Stetz and Delatorre was stale because that information had been provided, respectively, over 230 days and over 120 days before the warrant was sought. What was it about the passage of those periods of time, under the facts of this case, that made the information stale? Sandoval does not say. When did the information become stale? After 60 days? Or maybe 90? Sandoval does not say.

Counting days is not a "staleness" analysis. Sandoval has failed to explain how those periods of elapsed time, in the context of an investigation into an allegedly-ongoing drug distribution conspiracy, rendered the information stale. This is especially true in light of the fact that this information constituted just a portion of the totality of information, gathered over a period of many months, presented in support of the warrant application. According to that application, Stetz provided information in May 2012 that "Nacho" supplied methamphetamine to Jimmy Morris and lived in Webster City. He also said Morris had observed pails of methamphetamine in the back of "Nacho's" white Cadillac Escalade.

Delatorre then provided information in September 2012 that he sold methamphetamine he received from "Nacho." He also knew "Nacho" drove a white Cadillac Escalade. The information from both informants suggested ongoing criminal activity, *i.e.,* a drug operation involving "Nacho." This information was then corroborated and expanded upon by Poole during his post-*Miranda* interview on January 8, 2013, just one day before the warrant was sought. It was further supported by DOT records which revealed Sandoval had two white Cadillac Escalades registered in his name.

7

If the nature of the information, or of the alleged criminal activity, was time-sensitive, then the passage of months could be significant. That is not the situation here. The investigation in this case involved suspicions of ongoing criminal activity involving a drug supplier known as "Nacho." The fact that some of the information supporting the search warrant was several months old by the time law enforcement gathered additional, supporting information did not render the older information stale under the facts of this case. Sandoval is not entitled to have the older information stricken from the search warrant application for purposes of the probable cause analysis.

### 2. *Reliability of Informant Statements*

Sandoval argues the informants' statements concerning "Nacho" are unreliable because the warrant application failed to establish their credibility as required by Iowa law. Sandoval suggests that only Poole's information should be considered in the probable cause analysis, which he argues is insufficient to establish probable cause.

Sandoval cites Section 808.3 of the Iowa Code to argue that Young was required to establish the credibility of the informants in the search warrant application. This section states:

> [I]f the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant.

Iowa Code § 808.3. Sandoval points out that the application expressly addressed only the credibility of Poole and argues that it should have also addressed the credibility of Hawken, Roberts, Stetz, Morris and Delatorre. Sandoval argues that without establishing the credibility of those informants, the search warrant is not supported by probable cause based solely on Poole's statements.

8

The Government, citing *United States v. Cote*, 569 F.3d 391 (8th Cir. 2009), argues that for purposes of this federal prosecution the validity of the search is governed by the Fourth Amendment, not by Iowa law. The Government is correct. The Eighth Circuit Court of Appeals has made it very clear that in a federal prosecution, a search conducted by state authorities is evaluated under the Fourth Amendment, not under state law. For example, in *Cote* the defendant argued that an Iowa state court judge violated Iowa law in failing to record supplemental testimony presented in support of a search warrant application. *Id.* at 393. The court determined that the alleged violation was irrelevant in a federal prosecution:

> Iowa Code § 808.3, which requires an abstract of witness testimony that serves as a basis for granting a warrant application, is also inapplicable in Cote's case. "In a federal prosecution, we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards." *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir.1994) (citing *United States v. Johnson*, 12 F.3d 827, 835 (8th Cir.1994), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). "'[E]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because state law was violated.'" *Id.* (quoting *United States v. Moore*, 956 F.2d 843, 847 (8th Cir.1992)). Because we conclude the warrant in Cote's case did not violate the Fourth Amendment, we need not determine whether Judge Spande's failure to record Officer Fort's supplementary testimony constituted a violation of Iowa law.

*Id.*

In *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010), the defendant argued that evidence resulting from the search of a flash drive should have been suppressed because the search took place more than ten days after an Iowa state court's issuance of a search warrant. *Id.* at 476. The defendant relied on Iowa Code § 808.8, which provides that a search warrant becomes invalid if not executed within ten days. In rejecting the argument, the Court of Appeals first found that the warrant had been executed within ten days. *Id.* It then stated:

9

> Iowa Code § 808.8 would not control in any event because the legality of a search and seizure in a federal prosecution is determined by federal law even if the persons conducting a search were state actors. *United States v. Maholy*, 1 F.3d 718, 721 (8th Cir.1993).

*Id*. n.3.

In *Johnson* (cited, *supra,* in the quotation from *Cote*), the defendant alleged that a state court search warrant was invalid because the officer who applied for and executed that warrant was not authorized to do so. *United States v. Johnson*, 12 F.3d 827, 835 (8th Cir. 1994), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). Again, the Eighth Circuit Court of Appeals found that this allegation, even if true, was "not an issue here." *Id*. Instead, the search was "evaluated by application of federal Fourth Amendment standards." *Id*.

In short, any alleged lack of compliance with the technical requirements of Iowa Code Section 808.3 is simply irrelevant in this case. The relevant issue is whether the search warrant was supported by probable cause despite the application's lack of specific information concerning the credibility of Hawken, Roberts, Stetz, Morris and Delatorre. "When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *Solomon*, 432 F.3d at 827.

Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information or if it is corroborated by independent evidence. *Draper v. United States*, 358 U.S. 307, 313 (1959). If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable. *Gates*, 462 U.S. at 233-34. "Even the corroboration of minor, innocent details can suffice to establish probable cause." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quotation omitted).

In this case, it is apparent that Young relied primarily on the information provided by Poole in seeking the search warrant. This is revealed by Young's supporting affidavit itself, along with the fact that he submitted an "Informant's Attachment" with regard to Poole but not the other informants. Poole's information, alone, established virtually everything needed to support a probable cause finding, with the possible exception of "Nacho's" real name. Poole described his purchases of methamphetamine from a Mexican male known as "Nacho," gave detailed driving directions to "Nacho's" house from Webster City, and provided information (that Young corroborated) concerning the arrest earlier that day of another of "Nacho's" associates. Poole further stated that "Nacho" admitted to him that he supplied methamphetamine to various people, including "Jimmy" (presumably Jimmy Morris).

Had Poole known that "Nacho" was Sandoval, no other information would have been necessary to support the application for a search warrant. This gap was not filled by one of the informants whose reliability is now at issue. Instead, it was filled by information Young received from Wright County Deputy Darren Robinson, who advised Young that Sandoval goes by the name "Nacho" and resides at 1879 Stonega Avenue – a location that matches the detailed directions Poole provided. Doc. No. 110-2 at 5-6. The remaining information in Young's affidavit, *i.e.,* the information supplied by informants other than Poole, is consistent with the information provided by Poole and Robinson.

For example, Hawken provided information that Poole was being supplied by a Mexican male named "Nacho." This is consistent with Poole's own statement. Stetz stated that a Mexican male from Webster City named "Nacho" was a source of methamphetamine. Again, this is consistent with Poole's statement. Likewise, Delatorre too stated that he received methamphetamine from a person named "Nacho."

In short, Young's primary sources of information were Poole, an informant for whom Young provided details establishing credibility, and Robinson, a law enforcement officer. The information from other informants simply corroborated

Poole's story that a Mexican male in the Webster City named "Nacho" was supplying methamphetamine.  The other informants provided the added detail that "Nacho" drove a white Cadillac Escalade.  Young tied this information to the information supplied by Robinson by checking DOT records and discovering that Sandoval owns two white Escalades.

If the search warrant application was based only on information received from Hawken, Roberts, Stetz, Morris and Delatorre, and contained no information suggesting that those informants were reliable, then Sandoval would have a valid argument.  Instead, the application was based primarily on information provided by Poole, as supplemented by information supplied by Deputy Robinson and by Young's own review of DOT records.  The information from the other informants was consistent with the other information in Young's possession.  In applying Fourth Amendment standards and considering the totality of the circumstances, I find that it was reasonable for the issuing judge to consider and rely upon the information from all informants to conclude that probable cause existed.

### 3. *Evidence Connecting Sandoval or His Residence to Statements About "Nacho"*

Finally, Sandoval argues there was not probable cause to support the issuance of a search warrant because none of the information from the informants connected him or his residence to the information concerning "Nacho."  "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue."  *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).  The Eighth Circuit has held that "an officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has 'common sense appeal.'"  *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003)).

The analysis set forth in the preceding section answers applies equally here. Robinson had previously advised Young of Sandoval's address and that Sandoval went by the name "Nacho." When Poole was interviewed, he provided detailed driving directions that were consistent with Sandoval's address. Meanwhile, other informants had stated that "Nacho" drives a white Escalade. Young reviewed DOT records and discovered that Sandoval owns two such vehicles. All of this information, when considered in its totality, established a "fair probability" that evidence of a crime would be found at Sandoval's residence. *See Warford*, 439 F.3d at 841 (noting that an affidavit will establish probable cause if it "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'").

To conclude, based on the totality of circumstances I find that probable cause supported the Iowa District Court Judge's issuance of the search warrant. Sandoval's motion to suppress must be denied.

### B. *Good Faith Exception*

Sandoval argues that if the search warrant was not supported by probable cause, and was therefore invalid, the "good faith" exception to the exclusionary rule, as described in *United States v. Leon*, 468 U.S. 897 (1984), would not apply. My finding that the search warrant *was* supported by probable cause renders this argument moot, for now. Nonetheless, because this is a Report and Recommendation, subject to the district court's *de novo* review, I will address it.

"Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012). "The 'good-faith' inquiry is confined to the objectively ascertainable question whether a reasonably well trained

officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* Sandoval argues the good faith exception would not apply because Young, who applied for and executed the search warrant, knew that the warrant did not establish the informants' credibility and that the remaining information did not establish probable cause.

The Government argues that none of the four circumstances that prevent the application of the good faith exception are present in this case. These circumstances are:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*'; and (4) when the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *United States v. Proell*, 485, F.3d 427, 430 (9th Cir. 2007)) (emphasis in original).

As the Government points out, Sandoval has only raised the issue of a lack of probable cause. Even if my finding that probable cause supported the search warrant is incorrect, the existence of probable cause was not so clearly lacking as to make it unreasonable for law enforcement officers to believe that the warrant was valid. The information provided by Poole was found to be credible based on his history of providing truthful information in the past and its corroboration with similar information provided by informants and agents that linked "Nacho" to the defendant. Courts have found probable cause under similar circumstances. *See United States v. Tyler*, 238 F.3d 1036, 1038-39 (8th Cir. 2001) (holding that probable cause existed to search defendant's residence where an informant told police that defendant was his drug supplier, identified defendant by his alias, described defendant's two automobiles, and

recited defendant's telephone number and address). There is also nothing in the record suggesting that Young did not believe the informants' statements were credible.

It was reasonable for the law enforcement officers to believe that the search warrant was valid. Therefore, even if it is determined after the fact that the warrant was not supported by probable cause, *Leon's* good faith exception would prevent exclusion of the resulting evidence.

## *Conclusion*

For the foregoing reasons, I find that neither the evidence recovered from the search of Sandoval's home nor Sandoval's post-*Miranda* interview should be suppressed. As such, I RESPECTFULLY RECOMMEND that Sandoval's motion to suppress (Doc. No. 110) be **denied**. Objections to this Report and Recommendation must be filed by **September 17, 2013.** Responses to objections must be filed by **October 1, 2013.**

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **September 10, 2013, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>**. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 3rd day of September, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE